## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN BRAMBLE,** | : | **CIV NO. 4:20-CV-2394** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.  Factual Background and Procedural History

This case comes before us for consideration of a motion for preliminary injunction filed by the plaintiff, John Bramble. (Doc. 9). According to the well-pleaded facts set forth in Bramble's complaint and motion for preliminary injunction, Bramble is a Delaware state inmate who was transferred to the custody of the Pennsylvania Department of Corrections in February of 2019, following his acquittal on Delaware state charges relating to what Bramble describes as "an incident in a Delaware prison." (Doc. 1, at 7.) The exhibits attached by Bramble to his motion for preliminary injunction provides further context on this "incident," stating that Bramble was transferred to Pennsylvania, "following a riot and the subsequent death of a staff member in Delaware." (Doc. 9-1, at 1.)

Upon his arrival in Pennsylvania custody, Bramble was placed on the

Department of Corrections' Restricted Release List, or RRL. (Doc. 1, at 7). Bramble contends that he has remained on the RRL, in isolation, and with his privileges curtailed, but without any hearing or any kind of due process, since at least June of 2020. (Id., at 8).

It is against this factual backdrop that Bramble filed a motion for preliminary injunction, which requests that we order the Department of Corrections to remove Bramble from the RRL, place him in general population, and return him to the custody of the Delaware Department of Corrections immediately. (Doc. 9). The defendants filed an initial response in opposition to this motion. (Doc. 15). That response, however, did not clearly describe the procedural due process that Bramble may have received while housed in Pennsylvania as an RRL inmate. Accordingly, we directed the defendants to supplement their response, providing this additional information. (Doc. 32).

We have now received this supplemental response. (Doc. 42). Attached to this response is a declaration by Michael Knapp, a Unit Manager who previously oversaw Bramble's custody. (Doc. 42-1). That declaration confirmed that Bramble had been placed on RRL status in accordance with prison policy DC-ADM 802 §1.C.1. Moreover, Mr. Knapp stated that in accordance with this prison policy, RRL inmates are entitled to periodic reviews of their custodial status. According to

2

Mr. Knapp, Bramble most recently received an RRL status review in March of 2021, at which time it was determined that he should remain in RRL status.

Given this supplemental response, which confirms that Bramble has received a custody status review within the past 4 months, for the reasons set forth below Bramble's motion for preliminary injunction will be denied.

## II. <u>Discussion</u>

### A.   <u>Preliminary Injunction Rule 65– The Legal Standard.</u>

Inmate *pro se* pleadings, like those filed here which seek extraordinary or emergency relief in the form of preliminary injunctions, are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:

> Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

<u>Gerardi v. Pelullo</u>, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1244, 1254 (3d Cir. 1985)). <u>See also</u> <u>Highmark, Inc. v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 170-71 (3d Cir. 2001); <u>Emile v.</u>

SCI-Pittsburgh, 2006 WL 2773261, *6 (W.D. Pa. Sept. 24, 2006) (denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir. 1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir. 1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir. 1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Rule 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis in original) (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute. Specifically, 18 U.S.C. § 3626 limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

5

18 U.S.C. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are also instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

§ 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where an inmate requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Where the requested preliminary injunction "is directed not merely at preserving the *status quo* but...at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be used sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60

F.3d 518 (3d Cir. 1995).

In addition, to the extent that the plaintiff seeks a preliminary injunction with some enduring effect, he must show that he will be irreparably injured by the denial of this extraordinary relief. In order to satisfy this element of a claim for preliminary injunctive relief, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). With respect to this benchmark standard for a preliminary injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm that "cannot be redressed by a legal or an equitable remedy following trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) ("The preliminary injunction must be the only way of protecting the plaintiff from harm"). Plaintiff bears this burden of showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In fact, the Plaintiff must show *immediate* irreparable injury, which is more than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987). The case law provides some assistance in determining that injury which is irreparable under this standard. "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for . . .'." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted). Additionally, "the claimed injury cannot merely be possible, speculative or remote." Dice v. Clinicorp, Inc., 887 F.Supp. 803, 809 (W.D. Pa. 1995). An injunction is not issued "simply to eliminate the possibility of a remote future injury . . ." Acierno, 40 F.3d at 655 (citation omitted).

7

Messner, 2009 WL 1406986, at *4 .

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the *status quo*, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997). Therefore, in a case such as this, where

> [The inmate-] Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial. As a result, Plaintiff's motion for preliminary injunction should be denied.

Messner, 2009 WL 1406986, at *5.

In assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir. 2001)).

### B.    **This Motion for Preliminary Injunction Will Be Denied.**

As we have noted in order to obtain a preliminary injunction Bramble must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe, 868 F.2d at 72 (emphasis in

8

original). In our view, Bramble has not carried this demanding, dual burden of proof in the instant case at the present time.

The gravamen of Bramble's complaint and motion for preliminary injunction is his assertion that he has been placed and held in RRL status by the Department of Corrections for more than a year without adequate due process protections. Thus, any evaluation of Bramble's likelihood of success on the merits, or assessment of the degree of irreparable harm he has suffered, must begin with a consideration of this inmate's due process rights in the specific factual context of RRL designation. On this score, we recognize that:

> The RRL is a list of inmates who may only be released from A[dministrative] C[ustody] status upon prior approval of the Secretary. An inmate may be placed on RRL "when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." The Secretary must approve the designation of the inmate to the RRL. See DC–ADM 802, § 1.B, p. 1–2 and § 4.B, p. 4–2.

Nifas v. Beard, 374 F. App'x 241, 243 (3d Cir. 2010). In turn, "[a]ccording to DOC policy DC–ADM 802, Administrative Custody is defined as 'a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population.' DC–ADM 802, Section 3(A)(1)." Booze v. Wetzel, No. 1:CV-13-CV-2139, 2015 WL 5173937, at *4 (M.D. Pa. Sept. 2, 2015). Thus, RRL inmates constitute a subset of the universe of prisoners placed in administrative custody. Further,

> [B]oth RRL and non-RRL inmates have their custody status periodically reviewed by the [prison] P[rogram] R[eview] C[ommittee]. In the case of a non-RRL inmate, either the PRC or the Superintendent has the final authority to release the inmate into general population. See DC–ADM 802, Section 4(A). In the case of a RRL inmate, however, the PRC may recommend the inmate's release from AC status into general population, but the release requires the approval of the Secretary of Corrections or his or her designee. See id. In all other respects, RRL inmates are treated identically to their non-RRL counterparts on AC status. See id.

Id. at *5.

Given this regulatory framework, in analyzing Bramble's procedural due process claims, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

When considering due process claims arising out of an inmate's RRL designation, it is well settled that:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement;

and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. See id. at 468, 115 S.Ct. 2293; Shoats v. Horn, 213 F.3d 140, 144 (3d Cir.2000).

Huertas v. Sec'y Pennsylvania Dep't of Corr., 533 F. App'x 64, 66 (3d Cir. 2013). Applying these benchmarks, it has been held that RRL placement or detention in administrative custody for brief periods of six months or less do not impose the type of atypical and significant hardships on inmates which trigger due process protections. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); Torres v. Fauver, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest).

Prolonged detention in RRL status implicates greater due process concerns, but even in this setting the requirements of due process are minimal. When considering due process claims based upon allegations of prolonged confinement in RRL status, the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process." Shoats, 213 F.3d at 144 (8 years RRL detention). In this setting "the periodic reviews conducted by the PRC  . . . comport with the minimum constitutional standards for due process." Id. at 147. See Washington–El v. Beard, 562 F. App'x 61, 63 (3d Cir. 2014); Booze, 2015 WL 5173937, at *7.

Given these constitutional guideposts, it cannot be said that Bramble has shown a substantial likelihood of success on the merits of his due process claims. At the outset, the initial decision to place Bramble in RRL status does not, by itself, trigger the plaintiff's due process rights since that initial placement decision did not entail any atypical and significant hardships on Bramble beyond the fact of confinement itself. Smith, 293 F.3d at 654; Torres, 292 F.3d at 151–52. Moreover, given the security concerns inherent in the transfer of an inmate who had been charged with criminal offenses arising out of a riot that resulted in a staff fatality, this initial RRL placement decision was rationally related to the cardinal correctional consideration of institutional security.

While the duration of Bramble's administrative custody and RRL confinement, which exceeds two years, now implicates due process concerns, the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process," Shoats, 213 F.3d at 144, and has found that "the periodic reviews conducted by the PRC . . . comport with the minimum constitutional standards for due process." Id. at 147. Here, the defendants have attested that Bramble is now receiving the periodic PRC reviews called for by Shoat and by DC-ADM 802. Given this attestation, Bramble has not shown a current likelihood of success on his due process claim.

Further, in light of the periodic custody reviews he is now receiving, it cannot be said that Bramble is presently suffering an irreparable injury. Under Rule 65, in order to satisfy this element of a claim for preliminary injunctive relief, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Reilly, 858 F.3d at 179. However, since Shoat and its progeny only call for periodic informal PRC custody reviews to satisfy due process, and it is asserted that Bramble is currently receiving these PRC reviews, the plaintiff is being afforded all of the process which is due to him in this setting. Therefore, he is suffering no cognizable constitutional injury at this time.

Beyond Bramble's failure to demonstrate a likelihood of success on the merits, or a current irreparable injury, we note that we must also consider the possible harm to other interested parties if the relief is granted. Kershner, 670 F.2d at 443. Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest.

In our view, these factors also weigh against Bramble at this time. In essence, Bramble would invite us to intervene in prison security placement decisions for a prisoner who, by his own admission, was involved in an incident while in Delaware custody that led to a riot and a staff fatality. We understand and appreciate that Bramble was charged with state offenses as result of this episode, but was acquitted. However, while that acquittal resolved Bramble's past state

criminal charges, it was not conclusive with respect to current institutional security concerns. Those concerns are judged by a different burden of proof and entail predictive future risk assessments. Further, courts are loathe to interfere with these judgments by correctional professionals on these issues of institutional safety. In our view, the defendants have substantial interests in ensuring the safety of inmates and staff, interests that could be prejudiced if we were to make individual ad hoc custody determinations as proposed by the plaintiff. Therefore, this factor also augurs in favor of denying Bramble's motion for preliminary injunction.

Finally, a dispassionate assessment of the broader public interest also weighs against granting Bramble's motion for preliminary injunction. Currently, it is reported that Bramble is being provided the type of informal periodic custody reviews to which he is constitutional entitled. Therefore, it appears that at least prospectively, Bramble's due process concerns are being fully satisfied. Given this fact, and recognizing that inmate requests for preliminary injunction "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration," Goff, 60 F.3d at 520 (citation omitted), we believe that the public interest would not be well-served by granting Bramble's request for release to general population and substituting our judgment for the considered views of correctional professionals.

Thus, finding that all of these factors prescribed by Rule 65 weigh against

Bramble's request for this extraordinary relief, the plaintiff's motion for preliminary injunction, (Doc. 9), will be denied.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: July 27, 2021.