## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN BRAMBLE,** | : | **Civil No. 4:20-CV-2394** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

This is a civil rights action brought by John Bramble, an inmate who is currently incarcerated in the Delaware Department of Corrections but for a period of time was housed in the Pennsylvania Department of Corrections. This transfer from Delaware DOC to Pennsylvania DOC stemmed from an incident in a Delaware prison in which a riot occurred and a correctional officer was killed. Bramble was charged in connection with this riot but ultimately was not convicted.

Bramble's complaint alleges a host of constitutional claims against the defendants, various correctional staff in the Pennsylvania DOC as well as the former Secretary of Corrections. On this score, Bramble alleges that while he was incarcerated in the Pennsylvania DOC, he was placed on the Restricted Release List ("RRL") and housed in Administrative Custody. Bramble asserts claims pursuant to

1

42 U.S.C. § 1983, alleging that the defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights by subjecting him to "indefinite solitary confinement" and retaliating against him for filing grievances. He also asserts civil conspiracy claims against the defendants.

The defendants have now filed a motion for summary judgment, arguing that the plaintiff has failed to show a genuine issue of material fact as to these claims and asserting that these claims all fail as a matter of law. After consideration, and for the following reasons, we agree that the plaintiff has failed to show that the defendants violated his constitutional rights when he was placed on the RRL and into Administrative Custody in the Pennsylvania DOC. In the alternative, we find that the defendants are entitled to qualified immunity on all of these claims. Accordingly, we will grant the defendants' motion for summary judgment.

## II.   **Background**

John Bramble is an inmate incarcerated in the Delaware DOC, but who was temporarily housed in the Pennsylvania DOC following his involvement in a prison riot in Delaware that resulted in the death of a correctional officer. (Doc. 57, ¶¶ 1, 3). Bramble was criminally charged in connection with this fatality, but was acquitted. When Bramble arrived at SCI Camp Hill on February 26, 2019, he was housed in Administrative Custody and placed on the RRL. (Id., ¶¶ 3-4). Bramble

remained in Administrative Custody and on the RRL until he was permanently transferred back to the Delaware DOC on August 31, 2021. (Doc 56-5, ¶ 5).

The placement of an inmate on the RRL involves a process that is governed by Pennsylvania DOC policy DC-ADM 802. (Doc. 57, ¶¶ 5-6). This policy states that an inmate may be placed on the RRL "when he/she poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." (Doc. 56-2, at 11). DC-ADM 802 sets forth a non-exhaustive list of factors that are considered for placing an inmate on the RRL, including: assaultive history against staff or inmates; sexual abuse history; escape or attempted escape history; and threats to the orderly operation of a facility, including attempted organization of inmates and/or demonstrated involvement in a Security Threat Group. (Id., at 11-12). The request form for RRL placement is initiated by the Unit Manager, forwarded to the Corrections Classification and Program Manager, DSCS, DSFM, Facility Manager, Regional Deputy Secretary, and the Executive Deputy Secretary. (Id., at 12). The Executive Deputy Secretary then forwards the request with his or her recommendation for placement on the RRL to the Secretary of Corrections, who makes the ultimate determination. (Id.) An inmate may appeal the decision to place him on the RRL. (Id., at 15).

Once an inmate is placed on the RRL in Administrative Custody, the Program Review Committee ("PRC") conducts periodic reviews to determine if continued

RRL placement is warranted. (Id., at 16). This review consists of weekly meetings for the inmate with counselors, a status review by the Unit Management Team every 30 days, followed by periodic status reviews every 90 days after the initial 60-day period. (Id.) The policy states that the continued placement on RRL should be documented in a DC-141, Facility Manager's Review, and a copy should be provided to the inmate. (Id.) If an inmate remains on the RRL following a 90-day review, the inmate may appeal. (Id.)

Further, there is an overall review of each inmate's status on the RRL that is to be conducted annually. (Id., at 17). This annual review follows the same process as that used to place an inmate on the RRL. The assigned counselor initiates a DC-46 Vote Sheet, which is used to record the final outcome. (Id.) The Unit Manager initiates a RRL Placement/Annual RRL Review/Removal request, which is considered by the CCPM, DSCS, DSFM, Facility Manager, Regional Deputy Secretary, and the Executive Deputy Secretary. (Id.) The Executive Deputy Secretary then forwards his or her recommendation to the Secretary, who makes the final determination on an inmate's RRL status. (Id.) An inmate may not be released from the RRL without written approval of the Secretary. (Id., at 23).

In the instant case, Bramble alleges that he was wrongfully placed in Administrative Custody on the RRL when he arrived at SCI Camp Hill on February 26, 2019, and that he was never informed of the reasons he was placed on RRL.

(Doc. 1). He further contends that he did not receive the review process outlined in the DC-ADM 802, and that his attempts to file grievances or appeal his placement on the RRL were thwarted by prison staff who misdirected him regarding where to file his appeal and grievances. Specifically, he alleges that while he was provided an annual review in March of 2020, he never received a result from that review despite his attempts at filing grievances to obtain more information about it. However, Bramble did, in fact, receive an annual review in March of 2021, after which it was determined by Secretary Wetzel that continued RRL placement was appropriate. (Doc. 56-1, ¶¶ 26-27).

Bramble filed this suit on December 21, 2020, alleging violations of his First, Fifth, Eighth, and Fourteenth Amendment rights, as well as civil conspiracy claims against the correctional defendants. The defendants have now filed a motion for summary judgment, arguing that Bramble has not shown that the defendants violated his constitutional rights or conspired against him. (Doc. 55). This motion is fully briefed and is ripe for resolution. (Docs. 56-60). After consideration, we will grant the defendants' motion.

## III.   Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676

F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697

F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue

of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is

also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).

Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338,

341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or

assess credibility when passing upon a motion for summary judgment. Rather, in

adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party. Big Apple BMW,

Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where

the non-moving party's evidence contradicts the movant's, then the non-movant's

must be taken as true. Id. Additionally, the court is not to decide whether the

evidence unquestionably favors one side or the other, or to make credibility

determinations, but instead must decide whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented. Anderson, 477 U.S. at 252; see

also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third

Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against these legal benchmarks that we assess the defendants' motion for summary judgment.

## B. **The Defendants' Motion will be Granted.**

As we have explained, Bramble asserts First, Fifth, Eighth, and Fourteenth Amendment claims against thirteen defendants who hold or previously held various positions in the Pennsylvania DOC. He also asserts civil conspiracy claims against these defendants, alleging in a conclusory fashion that all of these thirteen defendants conspired to violate his constitutional rights. However, as we will discuss, Bramble has failed to show that the defendants violated his constitutional rights. Moreover, the defendants are entitled to qualified immunity on Bramble's claims. Accordingly,

9

we will grant the defendants' motion for summary judgment.

### 1. **Fifth Amendment Claim**

The defendants first contend that the plaintiff's Fifth Amendment claim fails as a matter of law, since the defendants are not federal actors. We agree. Indeed, it is well settled that the Fifth Amendment "only limits federal government action" and does not restrict the actions of state actors. Tarapchak v. Lackawanna County, 173 F.Supp.3d 57, 78 (M.D. Pa. 2016) (citing Pub. Util. Comm'n of District of Columbia v. Pollak, 343 U.S. 451, 461 (1952); see also Miller v. Knight, 2021 WL 4445014, at *9 (W.D. Pa. Sept. 28, 2021) (dismissing Fifth Amendment claim against state prison officials). Accordingly, Bramble's Fifth Amendment claim against these state correctional defendants fails.

### 2. **First Amendment Claim**

Bramble then brings a First Amendment retaliation claim against the defendants, alleging that they retaliated against him when they made exhausting his administrative remedies difficult and essentially "meaningless" by misdirecting him where and with whom to file his grievances and appeals. He contends that this was done in retaliation for his apparent involvement in the Delaware prison riot and for exercising his right to go to trial and defend himself on the charges brought against him.

At the outset, to the extent Bramble attempts to bring an independent claim for

the obstruction of the grievance process, this claim fails as a matter of law since it is well settled that "a prisoner has no constitutional right to a grievance procedure." Rivera v. Pa. Dep't of Corrections, 346 F. App'x 749, 751 (3d Cir. 2009); see also Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013); Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (dismissing First Amendment claim that prison officials obstructed the grievance procedure). Accordingly, to the extent Bramble is seeking to assert an independent constitutional claim on these grounds, such a claim is without merit.

As for the retaliation claim, Bramble contends that his placement on the RRL and the subsequent misdirection of his appeals and grievances was done in retaliation for his involvement in the Delaware prison riot. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). However, it is well-settled that de minimis actions

do not rise to the level of constitutionally cognizable retaliation. Thaddeus-X v.

Blatter, 175 F.3d 378, 396 (6th Cir. 1999) ("It is not necessarily true, however, that

every action, no matter how small, is constitutionally cognizable.") As one court has

observed:

> The de minimis standard ... achieves the proper balance between the
> need to recognize valid retaliation claims and the danger of "federal
> courts embroil[ing] themselves in every disciplinary act that occurs in
> state penal institutions." Woods, 60 F.3d at 1166. The purpose of
> allowing inmate retaliation claims under § 1983 is to ensure that
> prisoners are not unduly discouraged from exercising constitutional
> rights. See Crawford-El, 523 U.S. at 588 n. 10, 118 S. Ct. 1584. Some
> acts, though maybe motivated by retaliatory intent, are so de minimis
> that they would not deter the ordinary person from further exercise of
> his rights. Such acts do not rise to the level of constitutional violations
> and cannot form the basis of a § 1983 claim.

Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). See, e.g., Pope v. Bernard, 2011

WL 478055, at *2 (1st Cir. Feb. 10, 2011).

The third essential element to a retaliation claim is that there be a causal link

between the exercise of a constitutional right and the adverse action taken against the

prisoner. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001). To establish this third,

and crucial, component to a constitutional retaliation claim, causation, Bramble must

make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link. See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). In

the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

In the prison context, if Bramble makes this exacting showing, the defendants may rebut the retaliation claim by showing that there were legitimate penological reasons for Bramble's placement in Administrative Custody, and that the action would have been taken regardless of the plaintiff's protected activity. Rauser, 241 F.3d at 333-34; Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010).

Here, Bramble claims that he was placed in Administrative Custody on the RRL, and that several defendants subsequently acted to misdirect his grievances and appeals, because they thought he should have been convicted at trial. (Doc. 1, at 9-11, 13-14). Thus, the protected activity that he claims is the basis for the defendants' alleged retaliation is his right to defend himself against criminal charges. However, it has been held that defending oneself in a criminal case is not a right which falls under the First Amendment's protections. See e.g., Gardner v. Barry, 2010 WL 4853885, at *10 (M.D. Pa. Nov. 23, 2010). As the Gardner court reasoned:

> The Petitions Clause of the First Amendment, unlike the free speech clause, refers to specific conduct in which an individual addresses the government and asks the government "to fix what, allegedly, government has broken or has failed in its duty to repair." San Filippo v. Bongiovanni, 30 F.3d 424, 442 (3d Cir.1994). Such conduct literally involves petitioning the government, either through formal mechanisms, such as lawsuits, grievances and workers compensation claims, or

13

informal mechanisms, such as letters to the government. <u>Foraker</u>, 501 F.3d at 236–37; <u>see also</u> <u>id.</u> at 235–35 (discussing the history of the Petitions Clause).

Defending against criminal charges does not qualify as petitioning the government for a redress of grievances. It involves none of the hallmarks of petitioning such as filing complaints, grievances or letters.

<u>Id.</u> We find this reasoning persuasive and conclude that defending against criminal charges does not constitute protected activity for purposes of a First Amendment retaliation claim.

Moreover, we find that even if Bramble could make the threshold showing that the defendants retaliated against him for protected constitutional activity, the defendants have convincingly set forth evidence that the Pennsylvania DOC would have taken the same action regardless of the protected activity. The defendants have attached the declaration of Defendant Wetzel, which outlines the security concerns that resulted in Bramble's initial and continued placement on the RRL. (Doc. 56-1). These security concerns included: Bramble's criminal history, including multiple juvenile arrests and four adult convictions; the fact that he was serving a forty-year sentence for aggravated assault, firearms charges, and robbery; his prior history of assaultive conduct in the Delaware DOC, including assaulting and threatening behavior, possession of dangerous contraband, and group activity implicating security threats to the institution; his lack of participation in institutional programming; a misconduct received in December 2020 while he was in

14

Administrative Custody; and his overall "poor" adjustment to incarceration. (Id., ¶¶ 17, 19, 22-23).

In addition to Defendant Wetzel's declaration, the record contains Bramble's periodic reviews by the PRC. These reviews consistently indicated that Bramble's RRL placement would be continued under DC-ADM 802, § 1.B.1.a.[1] (Doc. 1, at 68-80). Accordingly, given this uncontradicted evidence detailing the profound and substantial security concerns which the plaintiff presented, we conclude that even if Bramble could set forth the threshold showing for a retaliation claim, the record supports the defendants' assertion that the same action would have been taken regardless of any protected activity. Thus, summary judgment will be granted as to the plaintiff's First Amendment claim.

### 3. Eighth Amendment Claim

Bramble next asserts a claim pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment, alleging that his continued placement in Administrative Custody for 22 months without the chance of release was unconstitutional and was done because of his involvement in the Delaware prison riot. (Doc. 1, at 14-15). He contends that the defendants did not offer him programs

---

[1] DC-ADM 802, § 1.B.1.a states that an inmate may be assigned AC status when "the inmate is in danger from some person(s) in the facility . . . and/or the inmate is a danger to some person(s) in the facility and the person(s) cannot be protected by alternate measures."

to which he was entitled, which if successfully completed, could have impacted a decision to release him from the RRL. (Id.)

Several overarching and animating constitutional considerations govern analysis of any Eighth Amendment claim. As the Court of Appeals has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.
>
> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S. Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344–45 (3d Cir. 2000).

Thus, while prison officials may violate an inmate's rights under the Eighth

Amendment to the United States Constitution by displaying "deliberate indifference"

to an inmate's needs, to sustain such a claim an inmate must:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." <u>Farmer v. Brennan</u>, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted). In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." <u>Id.</u> "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

<u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 125 (3d Cir. 2001).

The same guiding principles apply to inmate complaints regarding their

conditions of confinement.  "When an Eighth Amendment claim arises in the context

of a challenge to conditions of confinement, we must determine if prison officials

acted with 'deliberate indifference' to the inmate's health." <u>Fuentes,</u> 206 F.3d at 345

(quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "The objective inquiry is

whether the inmate was 'denied the minimal civilized measure of life's necessities.'

" <u>Id.</u> (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1991)). In this setting, it is clear

that:

> The Eighth Amendment prohibits punishments inconsistent with
> "evolving standards of decency that mark the progress of a maturing
> society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d
> 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S. Ct. 590, 2
> L.Ed.2d 630 (1958)). Conditions of prison confinement violate the
> Eighth Amendment only if they "deprive inmates of the minimal
> civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S.
> 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003). Thus, these claims also require proof of a both culpable state of mind and objective proof of physical conditions of confinement that shock the conscience and depart from minimal civilized standards of life's necessities. Simply put, "[t]o violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard." Hammond v. Bledsoe, 2013 WL 5797647, at *10 (M.D. Pa. Oct. 28, 2013) (citing Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985)); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 757 (3d Cir. 1979)).

In this case, Bramble asserts that his placement on the RRL violates the Eighth Amendment. At the outset, it is well settled that mere placement in Administrative Custody does not violate the Eighth Amendment. Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). See also Booze v. Wetzel, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014) ("[M]ere placement on AC, on the RRL, does not violate the Eighth Amendment"). Thus, we cannot conclude that the mere placement of Bramble on the RRL itself violated the Eighth Amendment.

Nor has Bramble established that the length of his confinement in Administrative Custody violated the Eighth Amendment. Indeed, while we recognize that Bramble remained in Administrative Custody on the RRL for over two years before he was returned to the Delaware DOC, Bramble has not set forth any evidence tending to show that his confinement in Administrative Custody denied him "the

minimal civilized measure of life's necessities," <u>Fuentes</u>, 206 F.3d at 345 (quotations and citation omitted), or that there was no legitimate penological objective for his placement in Administrative Custody.

On this score, Bramble asserts in a speculative and conclusory fashion that "solitary confinement has been proven to cause substantial psychological damage," (Doc. 1, at 15), yet does not allege that he has suffered any psychological injury. Bramble further contends that he was a "model inmate" who was denied programming which could have led to his release from the RRL. However, responses to Bramble's grievances indicate that Bramble received at least one misconduct while on the RRL in December 2020, that he refused programming while on the RRL, and that certain programs were not offered to AC inmates such as Bramble. (<u>See</u> Doc. 59, at 29, 33, 41, 55, 58-62). Finally, while Bramble contends there was no legitimate penological interest for his continued placement on the RRL, as we have explained, Secretary Wetzel's declaration provides a fulsome, and uncontradicted, penological justification for Bramble's RRL placement, a justification grounded in Bramble's history of crime and institutional misconduct. This declaration sets forth numerous reasons why Secretary Wetzel reasonably believed that Bramble posed a security concern to the facility. (<u>See</u> Doc. 56-1, ¶¶ 17, 19, 22-23).

Thus, Bramble has failed to show that the conditions of his confinement were "dangerous, intolerable or shockingly substandard." <u>Hammond</u>, 2013 WL 5797647,

at *10. Given that Bramble has not shown a dispute of material fact as to the

conditions of his confinement, we conclude that Bramble's Eighth Amendment claim

fails on its merits. Accordingly, summary judgment will be granted on this claim.

### 4. **Fourteenth Amendment Claim**

Bramble's next claim avers that the defendants violated his Fourteenth

Amendment right to due process when they denied him hearings, failed to give him

a written decision regarding his RRL placement, misdirected his appeals, and denied

him programming. (Doc. 1, at 16). However, after review of the record, we conclude

that Bramble was afforded adequate due process, and this claim fails on its merits.

We begin with a consideration of Bramble's due process rights in the specific

factual context of RRL designation. On this score, we recognize that:

> The RRL is a list of inmates who may only be released from
> A[dministrative] C[ustody] status upon prior approval of the Secretary.
> An inmate may be placed on RRL "when he/she poses a threat to the
> secure operation of the facility and where a transfer to another facility
> or jurisdiction would not alleviate the security concern." The Secretary
> must approve the designation of the inmate to the RRL. See DC–ADM
> 802, § 1.B, p. 1–2 and § 4.B, p. 4–2.

Nifas v. Beard, 374 F. App'x 241, 243 (3d Cir. 2010). In turn, "[a]ccording to DOC

policy DC–ADM 802, Administrative Custody is defined as 'a status of confinement

for non-disciplinary reasons that provides closer supervision, control, and protection

than is provided in general population.'" Booze v. Wetzel, 2015 WL 5173937, at *4

(M.D. Pa. Sept. 2, 2015) (quoting DC–ADM 802, Section 3(A)(1)). Thus, RRL

inmates constitute a subset of the universe of prisoners placed in administrative custody. Further,

> [B]oth RRL and non-RRL inmates have their custody status periodically reviewed by the [prison] P[rogram] R[eview] C[ommittee]. In the case of a non-RRL inmate, either the PRC or the Superintendent has the final authority to release the inmate into general population. See DC–ADM 802, Section 4(A). In the case of a RRL inmate, however, the PRC may recommend the inmate's release from AC status into general population, but the release requires the approval of the Secretary of Corrections or his or her designee. See id. In all other respects, RRL inmates are treated identically to their non-RRL counterparts on AC status. See id.

Id. at *5.

Given this regulatory framework, in analyzing Bramble's procedural due process claims, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

When considering due process claims arising out of an inmate's RRL designation, it is well settled that:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v.

Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. See id. at 468, 115 S.Ct. 2293; Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000).

Huertas v. Sec'y Pennsylvania Dep't of Corr., 533 F. App'x 64, 66 (3d Cir. 2013). Applying these benchmarks, it has been held that RRL placement or detention in administrative custody for brief periods of six months or less do not impose the type of atypical and significant hardships on inmates which trigger due process protections. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest); Torres v. Fauver, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest).

Prolonged detention in RRL status implicates greater due process concerns, but even in this setting the requirements of due process are minimal. When considering due process claims based upon allegations of prolonged confinement in RRL status, the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process." Shoats, 213 F.3d at 144 (8 years RRL detention). In this setting "the periodic reviews conducted by the PRC ... comport with the minimum constitutional standards for due process." Id. at 147. See Washington–El v. Beard, 562 F. App'x 61,

63 (3d Cir. 2014); <u>Booze</u>, 2015 WL 5173937, at *7.

On this score, as we stated in our decision denying Bramble's motion for a preliminary injunction, the decision to place Bramble on the RRL does not, by itself, implicate due process concerns since that initial placement decision did not entail any atypical and significant hardships on Bramble beyond the fact of confinement itself. <u>Smith</u>, 293 F.3d at 654; <u>Torres</u>, 292 F.3d at 151–52. Moreover, while Bramble's prolonged placement on the RRL raises due process concerns, the Third Circuit has held that "an 'informal, nonadversary review' at which the prisoner has the opportunity to state his views, satisfies the requirements of due process," <u>Shoats</u>, 213 F.3d at 144, and has found that "the periodic reviews conducted by the PRC ... comport with the minimum constitutional standards for due process." <u>Id.</u> at 147.

Here, the record reveals that Bramble received this periodic review process from the PRC. These reviews consistently indicated that Bramble's RRL placement would be continued under DC-ADM 802, § 1.B.1.a. (Doc. 1, at 68-80). Bramble also received his annual review in March of 2021, after which Secretary Wetzel decided Bramble would remain on the RRL. (Doc. 56-1, ¶¶ 26-27).[2] Accordingly, we find

---

[2] While Bramble contends that his 2020 review was never processed and he never received a result, the record indicates that the process may have been slowed due to logistical complications driven by the COVID-19 pandemic. (Doc. 59, at 41). However, it is undisputed that Bramble received his periodic reviews by the PRC in 2019 and 2020, which as we have noted, is all the law requires in terms of due process protections in this setting. See <u>Shoats</u>, 213 F.3d at 144.

that Bramble received all the process he was due with respect to his RRL placement.

Further, to the extent that Bramble asserts a due process claim because his grievances were misdirected, this claim also fails. It is well settled that prisoners do not have a constitutional right to a grievance procedure. See Speight v. Sims, 283 F. App'x 880 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")); see also Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (holding the alleged obstruction of grievance procedures by a prison official did not give rise to an independent § 1983 claim). Nor do prisoners have a liberty interest protected by the due process clause in the grievance procedures. See Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)).

In addition, an inmate cannot sustain a constitutional tort claim against prison supervisors based solely upon assertions that officials failed to adequately investigate or respond to his past grievances. Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive

constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable); see also Cole v. Sobina, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Indeed, as to such claims, the Third Circuit has held that summary dismissal is appropriate "because there is no apparent obligation for prison officials to investigate prison grievances." Paluch v. Sec'y Pennsylvania Dept. Corr., 442 F. App'x 690, 695 (3d Cir. 2011) (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir. 1973)).

Thus, Bramble was not deprived of any process that was due to him under these circumstances. He alleges that he availed himself of the prison grievance procedures and, although he may not agree with the outcome of his grievances or how they were handled, his complaints were aired in the designated forum and assessed by the appropriate officials. The corresponding level of investigation into these grievances has no bearing on the success of his constitutional claims. See Alexander, 144 F. App'x 924 (involvement in post-incident grievance process not a basis for § 1983 liability). Therefore, to the extent Bramble asserts a Fourteenth Amendment claims alleging inadequate prison grievance procedures, this claim will be dismissed.

## 5. **Conspiracy Claims**

Bramble's complaint also attempts to assert civil conspiracy claims against the

defendants under 42 U.S.C. §§ 1985(3) and 1986. (Doc. 1, at 16-17). On this score, Bramble alleges in a completely conclusory fashion that all thirteen correctional defendants conspired to "plac[e] him in solitary confinement indefinitely despite him being a model inmate." (Id.) He further alleges that "[a]ll defendants were aware of the conspiracy (and were a part of it) and did nothing about it." (Id., at 17). These bare allegations fall far short of what is needed to prevail at the summary judgment stage on these claims.

> To state a claim under § 1985(3), a plaintiff must allege
>
> 1) a conspiracy; 2) for the purpose of depriving, either, directly or indirectly, any person or class of person of the equal protection of the laws . . .; and 3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Pearson v. Miller, 988 F.Supp. 848, 858 (M.D. Pa. 1997) (citing United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott, 463 U.S. 825, 828-29 (1983)). An action under § 1985(3) must allege "some racial, or perhaps otherwise class-barred, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 103 (1971).

Here, simply put, Bramble has failed to set forth evidence of a conspiracy between the defendants. Bramble asserts the bare and completely conclusory allegation that all defendants knew of and participated in a conspiracy to place him in "solitary confinement." Moreover, there are no facts in the complaint or evidence

presented from which we could even infer any race or class-based, invidiously discriminatory animus on the part of the defendants. Accordingly, this claim fails as a matter of law.

Bramble's § 1986 claim fares no better. Section 1986 provides, in part, as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

42 U.S.C. § 1986.

By its terms, § 1986 only relates to those who "having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title," and having the power to prevent the violation, neglect to do so. Thus, the plain language of § 1986 makes a violation of 42 U.S.C. § 1985 a legal prerequisite to civil liability under this statute. In short, "no claim can be maintained under section 1986 unless a cause of action has been established under section 1985." Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431 n. 10 (3d Cir. 1988) (citing Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981)). Therefore, a finding that Bramble has not stated a colorable § 1985 claim, in turn, compels the dismissal of Bramble's § 1986 claim which is legally and logically

dependent upon an underlying violation of 42 U.S.C. § 1985.

### 6.  <u>The Defendants are Entitled to Qualified Immunity.</u>

Finally, the defendants contend that they are entitled to qualified immunity. We agree.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." <u>Reichle v. Howards</u>, 566 U.S. 658, 664 (2012). A qualified immunity analysis involves two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011). Lower courts have the discretion to decide which question to analyze first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). The Supreme Court has cautioned courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." <u>Id.</u> (internal quotations omitted); <u>see also</u> <u>al-Kidd</u>, 563 U.S. at 735.

An official's conduct violates clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640

(1987)). The Supreme Court has stated that this standard does not require a case directly on point, but requires that "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Id. at 743 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015).

The dispositive question that the court must ask is "whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Davenport v. Borough of Homestead, 870 F.3d 273, 281 (3d Cir. 2017). This "clearly established" standard ensures that an official can reasonably anticipate when his or her conduct may give rise to liability, and "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties." Reichle, 566 U.S. at 664.

In the instant case, based on our foregoing analysis of Bramble's constitutional claims, we conclude that the defendants are entitled to qualified immunity. Indeed, as we have explained, Bramble has failed to show that the defendants violated his constitutional rights. It then follows that the defendants' actions could not have transgressed clearly established caselaw. Rather, as the record shows, the defendants

were well within constitutional bounds when they placed Bramble in Administrative Custody and provided him with periodic PRC reviews. Accordingly, the defendants' motion for summary judgment will be granted.

## IV.   <u>Conclusion</u>

Accordingly, for the foregoing reasons, the defendants' motion for summary judgment (Doc. 55) will be GRANTED.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

Dated: January 5, 2022